**James Bravo PALACIO and Monica Vasquez De Palacio, Individually and as Parents, Guardians and Next Friends of De Palacio, Brianda Porsche and Palacio, Adlefa Bravo, Appellants,**

v.

**AON PROPERTIES, INC., Greystar Management Services, L.P., Weiser Security Services, Inc., Appellees.**

No. 10–01–024–CV.

Court of Appeals of Texas,
Waco.

May 21, 2003.

pet'n), expressly disapproved of the earlier holding in *Gilbert.*

Rudy Cano, Vahldiek, Cano, Grayson, Hovenkamp & Petroski, Houston, for appellants.

Christine Kirchner, Chamberlain, Hrdlicka, White, Williams & Martin, Michele Quattlebaum, Lee Thibodeux, Preston & Cowan, L.L.P., Houston, for appellees.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

James Palacio, his wife Monica, their minor daughter Brianda, and Palacio's mother, Adelfa Bravo de Palacio, filed suit against AON Properties (owner of Riveraine Apartments), Greystar Management Services (management company of Riveraine Apartments), and Weiser Security Services (security provider for Riveraine Apartments). The subject of the suit was the injury sustained by Palacio when he was shot on Riveraine property. The trial court granted a summary judgment to AON, Greystar, and Weiser that Palacio take nothing. Palacio appeals. Because we conclude that the defendants' negligence was not a proximate cause of Palacio's injuries, we affirm the judgment.

## I. Background

James Palacio was asleep in the apartment of Margarita Morin–Gonzales when someone knocked at the door. It was approximately one a.m. Morin–Gonzales was not present in the apartment because she was incarcerated. Her brother, Ruben Morin, and Palacio were living in the apartment with Morin–Gonzales's two sons. Morin was awakened by the knock and went to the door. Morin's deposition testimony was that he saw one man through the peephole. Morin opened the door and the man asked to speak with "Larry." It is undisputed that Palacio goes by the nickname "Larry." The visitor indicated that he wanted to sell Larry a ring. Morin testified that he went to tell Palacio that someone was at the door for him, leaving the door ajar. Palacio got up, went to the front door to deal with the visitor, and after he spoke with the visitor for a few moments, a second man—"the one behind the wall"—shot him. Palacio was severely injured by the gunshot wound.

Palacio filed suit against AON, Greystar, and Weiser, among others, alleging negligence and gross negligence and seeking actual and exemplary damages. The other defendants were later nonsuited and play no role in this appeal. AON, Greystar, and Weiser joined "John Does 1–4" as responsible third parties under section 33.004 of the Texas Civil Practice & Remedies Code. TEX. CIV. PRAC. & REM.CODE ANN. § 33.004 (Vernon 1997).

AON and Greystar filed a motion for summary judgment, and Palacio responded. Weiser filed its own motion for summary judgment, incorporating the AON–Greystar motion to the extent it was applicable to Weiser, and adding grounds unique to Weiser. Palacio responded. The trial court granted both summary-judgment motions in favor of the defendants, and Palacio appealed to this Court. We concluded, in an unpublished order, that the two judgments did not comprise a final, appealable judgment because they did not dispose of the third-party claims filed by the defendants. *Palacio v. AON Props., Inc.*, No. 10–01–024–CV (Tex.App.-Waco April 24, 2002, order) (not designated for publication). A supplemental clerk's record was later filed in this Court containing the trial court's judgment disposing of all the parties and claims.

Palacio complains of eight issues and fourteen sub-issues. We consolidate the issues as follows: 1) whether the trial court abused its discretion in granting defendants a five-day protective order during which time a) the identity of a witness being deposed would be withheld from the parties, but not their attorneys, and b) access to the witness was denied; 2) whether the trial court abused its discretion in granting defendants leave to join responsible third parties; and 3) whether the trial court erred in granting defendants' motions for summary judgment. We will overrule issues one and three and affirm the judgment.

## II. Protective Order

■ Palacio complains in his first issue that the trial court abused its discretion in granting defendants' motion for an order that, for a period of five days, protected the identity of a witness being deposed, except as to the parties' attorneys. In addition, the order restrained any contact with the witness prior to the deposition. At the time, Palacio filed a Petition for Writ of Mandamus with the First Court of Appeals in Houston. That Court denied his petition, pointing out that under Texas Rule of Civil Procedure 76a, Palacio had an adequate remedy by appeal. *In re Palacio,* No. 01–00–00002–CV, 2000 WL 19665 (Tex.App.-Houston [1st Dist.] Jan. 11, 2000, orig. proceeding) (not designated for publication); Tex.R. Civ. P. 76a(8) (stating that "[a]ny order (or portion of an order or judgment) relating to sealing or unsealing court records shall be deemed to be severed from the case and a final judgment which may be appealed by any party"). We know of no notice of appeal regarding this protective order. In addition, the protective order at issue was in effect for only five days, and therefore, any appeal at this time would be untimely. Palacio urges us, instead, to strike the

witness's deposition testimony and to not consider it as summary-judgment evidence. He cites no case law supporting his request. We decline.

In addition, although Palacio did object to the witness's deposition as summary-judgment evidence and requested that the trial court strike the witness's testimony, nowhere in the record is there a "proposed order" Palacio submitted to the trial court requesting an explicit ruling on this issue. *See Allen v. Albin,* 97 S.W.3d 655, 663 (Tex.App.-Waco 2002, no pet.) (quoting *Dolcefino v. Randolph,* 19 S.W.3d 906, 926 (Tex.App.-Houston [14th Dist.] 2000, pet. denied)). And nowhere in the record is a ruling on this objection. We stated in *Allen* that "the granting of a summary-judgment motion does not necessarily provide an implicit ruling that either sustains or overrules objections to the summary-judgment evidence." *Id.* We conclude Palacio's objection to the witness's deposition testimony is not preserved. *See id.* Issue one is overruled.

## III. Summary Judgment

Palacio's third issue asserts that the trial court erred in granting the defendants' summary judgment. Although several grounds were raised in the defendants' motions for summary judgment, we will address only the element of proximate cause because we find it dispositive.

### a. Standard of Review for Summary Judgment

■ We review a summary judgment *de novo. Rucker v. Bank One Tex., N.A.,* 36 S.W.3d 649, 653 (Tex.App.-Waco 2000, pet. denied). The movant must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." Tex.R.

CIV. P. 166a(c); *e.g., Nixon v. Mr. Prop. Mgt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). When we review for whether a disputed material fact issue exists, we must accept as true all evidence favorable to the non-movant and must resolve all doubts and indulge every reasonable inference in favor of the non-movant. *Nixon,* 690 S.W.2d at 548–49. When necessary to establish a fact issue, the non-movant must present summary-judgment evidence. *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 907 (Tex.1982). Further, "[w]hen a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious." *FM Props. Operating, Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000).

*b. The intervening third-party criminal conduct*

■ In their motions, the defendants assert that the targeted, deliberate nature of the intervening third-party criminal conduct rose to the level of a superseding cause. The defendants point to Palacio's own recitation of the facts in his "First Amended Petition," which is a live pleading, to establish this targeted, deliberate nature:

> At approximately 1:15 a.m. on October 14, 1996, there was a knock on the apartment's front door which awakened Mr. Morin. He went to the door and found that there were two men standing there, asking to speak with "Larry." Mr. Palacio's nickname is "Larry," so Mr. Morin apparently assumed they were asking for him. Mr. Morin invited the men into the apartment, but they declined, saying they only wanted to ask "Larry" if he was interested in buying a ring. Mr. Morin turned around and saw Mr. Palacio walking toward him down the hallway. Mr. Morin walked past Mr. Palacio intent upon returning to bed. Upon arriving at the front door, Mr. Palacio did not recognize the men. One of the men asked Mr. Palacio if he would be interested in purchasing a ring and Mr. Palacio declined. Suddenly and with no warning, the other man shot him.

The defendants argue that this amounts to a judicial admission of the targeted, deliberate nature of the criminal conduct. *See Houston First American Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions. Any fact admitted is conclusively established in the case without the introduction of the pleadings or presentation of other evidence.").

Palacio counters with the argument that the defendants themselves supplied the trial court evidence that contradicts these admissions. In a deposition attached to the defendants' motions for summary judgment, Morin testified that he saw only one man at the door, at first, and that a second man—"the one behind the wall"—shot Palacio. Palacio's argument is that this evidence renders the judicial admissions evidentiary and no longer conclusive. *See id.* at 769 (stating that the record must be protected by the party relying on his opponent's pleadings as judicial admissions of fact, through the objection to 1) evidence contrary to that admission or 2) the submission of any issue bearing on the fact admitted); *see also Marshall v. Vise,* 767 S.W.2d 699, 700 (Tex.1989) (holding deemed admissions not conclusive if contradictory evidence introduced without objection). Palacio contends that this contradictory evidence supports a theory that while the first man might have known Palacio, the second man could have been a stranger who simply happened onto the

opportunity of the open door and used this found opportunity to inflict violence. In other words, the man who shot Palacio was not targeting him at all, but merely, through the negligence of the defendants, had the chance to shoot Palacio and took it.

A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Ridenour v. Herrington,* 47 S.W.3d 117, 120 (Tex.App.-Waco 2001, pet. denied) (citing *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982)); *accord Appleton v. Appleton,* 76 S.W.3d 78, 83 (Tex.App.-Houston [14th Dist.] 2002, no pet.). We conclude that the targeted, deliberate nature of the criminal conduct was conclusively established by the summary-judgment evidence.

### c. Proximate cause

Proximate cause has two elements: cause-in-fact and foreseeability. *Cowart v. Kmart Corp.,* 20 S.W.3d 779, 783 (Tex.App.-Dallas 2000, pet. denied) (citing *Travis v. Mesquite,* 830 S.W.2d 94, 98 (Tex.1992) (op. on reh'g)). Foreseeability requires that the defendant, "as a person of ordinary intelligence, should have anticipated the dangers his negligent act created for others." *Id.*

In *Phan Son Van v. Pena,* the Texas Supreme Court considered the burdens of the parties on summary judgment when proximate cause is at issue and the criminal conduct of a third party is alleged to be a superseding cause, extinguishing the liability of the defendant. *Phan Son Van v. Pena,* 990 S.W.2d 751, 752 (Tex.1999). In *Phan,* the Supreme Court concluded that a "defendant who seeks to negate foreseeability [as an element of proximate cause] on summary judgment must prove more than that the intervening third-party crim-

inal conduct occurred." *Id.* at 754. The defendant must show the conduct rises "to the level of a superseding cause based on considerations like those in Section 442" of the Restatement of Torts. *Id.*; RESTATEMENT (SECOND) OF TORTS § 442 (1965). If the defendant does this, it has negated the ordinary foreseeability element of proximate cause. *Phan,* 990 S.W.2d at 754. At that point, the burden shifts to the plaintiff to raise a fact issue by presenting controverting evidence that, "despite the 'extraordinary' and 'abnormal' nature of the intervening force, there was some indication at the time … that such a crime would be committed." *Id.* at 756.

### d. Superseding cause—analysis

To decide whether the criminal conduct in this case rises to the level of a superseding cause such that proximate cause is negated, the Restatement factors to be considered are:

1) the fact that its intervention brings about harm different in kind from that which would otherwise have resulted from the defendant's negligence;

2) the fact that its operation or the consequences thereof appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation;

3) the fact that the intervening force is operating independently of any situation created by the defendant's negligence, or, on the other hand, is or is not a normal result of such a situation;

4) the fact that the operation of the intervening force is due to a third person's act or to his failure to act;

5) the fact that the intervening force is due to an act of a third person that is wrongful toward the other and as such subjects the third person to liability to him; and

6) the degree of culpability of a wrongful act of a third person which sets the intervening force in motion.

RESTATEMENT (SECOND) OF TORTS § 442 (1965); *accord Humble Oil & Refining Co. v. Whitten,* 427 S.W.2d 313, 315 (Tex.1968) (adopting Section 442 factors); *Cowart,* 20 S.W.3d at 784; *Morin v. Moore,* 309 F.3d 316, 327 n. 4 (5th Cir.2002) (recognizing Texas law).

■ In considering the first factor, we find it instructive to examine our sister court's analysis in *Cowart. Cowart,* 20 S.W.3d at 784–85. In that case, ammunition was negligently sold to two minors. The minors used the ammunition to load a gun, and the loaded gun was used by a third party to kill Richard Cowart. *Id.* at 782. The court concluded that, under the first factor of Section 442, the harm that occurred was not that which would have otherwise resulted from the defendant's negligence. *Id.* at 784. At first glance, it would appear that someone getting shot with negligently sold ammunition is exactly the sort of harm that one would expect from the defendant's negligent act. But the court distinguished the "kind of harm" that resulted from the "kind of harm" that would have been expected to result on the basis of who actually committed the ultimate harm. *Id.* at 785. Similarly, we conclude that the targeted, deliberate nature of the criminal conduct in the case before us distinguishes the harm that occurred from the kind of harm that one would expect to occur due to the defendants' negligence. We would ordinarily expect the defendants to be liable for allowing the random criminal to find opportunity to exploit due to the defendants' negligence. But we would not necessarily expect the defendants to be liable for the criminal who knows his victim's name and targets him.

Under the second factor, the fact that one or more third parties would deliberately go to a particular tenant's apartment, knock on the door, ask for him by name, and then shoot him execution-style, is indeed extraordinary. Many citizens are concerned that they could be the victims of random crime, but the chances of such a targeted, deliberate act befalling the average citizen are minimal. We do not believe we have reached the point in our society where this conduct should be considered a normal circumstance.

Third, the third-party criminal conduct in this case was clearly operating independently of any situation created by the defendants' alleged negligence. In fact, it is unclear that the harm could have been avoided even if the defendants had flawlessly performed every function expected of them. For example, Palacio complained that the defendants did not stop the visitors and call his apartment to inform him of their presence. But when they came to his door, Morin willingly opened the door and exposed Palacio to them. There is no evidence that any advance warning would have changed the events as they occurred.[1]

Having established that the targeted, deliberate criminal conduct and the harm it inflicted were extraordinary in nature and not of the type generally contemplated by the duty of a landowner to protect against the criminal acts of a third party, the defendants satisfied the first three elements of Section 442. It is beyond dispute that the remaining factors, "which focus on the intervenor's wrongful conduct and degree of culpability," support the conclusion that the third-party criminal conduct in

---

1. In fact, there is evidence in the record that there was no phone in the apartment for the defendants to call.

this case was a superseding cause of the harm inflicted upon Palacio. *Phan,* 990 S.W.2d at 756. We conclude that the summary-judgment evidence conclusively establishes that the criminal conduct in this case was a superseding cause of the injuries incurred such that proximate cause was negated.

### e. Palacio's burden

Although proximate cause is negated through the establishment of the superseding cause, Palacio could still defeat the motions for summary judgment. This would require evidence that, despite the "extraordinary" and "abnormal" nature of the superseding cause, there was some indication to the defendants that the targeted, deliberate criminal conduct would occur. *Phan,* 990 S.W.2d at 756. This must be something more than the generalized foreseeability required to establish duty. *See id.* (stating that summary-judgment evidence was needed to show there was some indication at the time of the illegal sale that such a crime would be committed); *Cowart,* 20 S.W.3d at 786 (stating that summary-judgment evidence was needed to show that the defendant should have been alerted to the fact that the minors who purchased the ammunition would put it in the hands of someone who would engage in the criminal conduct).

Palacio relies on his summary-judgment evidence to establish an issue of foreseeability. But he points to no evidence that the defendants knew, or should have known, of the sort of threat facing Palacio. Without controverting evidence, there is no fact issue on foreseeability.

### IV. Other Issue

Because we affirm, we do not reach Palacio's additional issue about whether the trial court abused its discretion in granting defendants leave to join responsible third parties.

### V. Conclusion

We conclude that the defendants negated proximate cause and Palacio did not present evidence that raised a genuine issue of fact that the defendants could have foreseen the events that resulted in his injury. Consequently, we affirm the trial court's judgment.